IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT COURT OF CALIFORNIA

SHEREE RENE COE,

                Plaintiff,                      2:13-cv-00432-KJM-CKD

       vs.

H. SCHAEFFER, ROGER
BUTTERFIELD, CHRIS PIOMBO,
CITY OF LODI, DOES 1–20,

                Defendants.            <u>ORDER</u>

_____/

        This matter is before the court on the motions to dismiss by defendants H. Schaeffer, Roger Butterfield and Chris Piombo ("individual defendants") (ECF 8) and defendant City of Lodi ("Lodi") (ECF 7).  The court decided this matter without a hearing.  For the reasons below, defendants' motion is granted in part and denied in part.

I.      <u>ALLEGED FACTS AND PROCEDURAL BACKGROUND</u>

        Plaintiff Coe is a 57-year-old woman living in Lodi.  (First Amended Complaint, ECF 5 ("FAC") ¶ 11.)  For the past several years, plaintiff has helped raise and care for one of her daughter's four children on a near daily basis.  (*Id.* ¶ 12.)  In February 2012, plaintiff's daughter "P" arranged for Officer H. Schaeffer to interview plaintiff's granddaughter "A" regarding allegations of sexual impropriety that "A" disclosed witnessing to a counselor.  (*Id.*

1

¶¶ 13–14.)  After some confusion about the appointment, plaintiff brought "A" to be interviewed at the Child Advocacy Center ("CAC") in French Camp, California.  (*Id.* ¶¶ 15-17.)  Plaintiff was not allowed in the room during "A"'s interview.  (*Id.* ¶ 17.)  After the interview, Schaeffer asked plaintiff to sit down in a conference room with her and a Child Protective Services worker.  (*Id.* ¶ 18.)  In the conference room, Schaeffer asked plaintiff "accusatory" questions about plaintiff's care of her grandchildren.  (*Id.*)  Plaintiff, whose questions about the details of the interview were rebuffed by Schaeffer, told Schaeffer she was "angry about the process and for not being able to sit in, observe, or otherwise hear the interview of 'A.'"  (*Id.* ¶ 19.)  Schaeffer stated that it was policy not to share such information, and plaintiff replied that this policy does not work.  (*Id.* ¶ 20)  Schaeffer then resumed asking plaintiff accusatory questions.  (*Id.*)

Plaintiff stood up "incensed" and told Schaeffer she was being "obstinate" and "obtuse."  (*Id.* ¶ 21.)  Schaeffer stood up and yelled at plaintiff to leave the room, and plaintiff replied she was not finished with what she had to say.  (*Id.*)  Schaeffer then "grabbed [p]laintiff's arms and shoved [her] back and shoulder against the door and wall of the conference room, tightly gripped [her] arms, and threatened to have [her] arrested for not leaving when told."  (*Id.*)  Schaeffer opened the conference room door and shoved plaintiff out.  (*Id.* ¶ 22.)  Plaintiff objected to this treatment and suffered pain and bruises to her arms.  (*Id.*)  Plaintiff attempted to file a citizen's complaint against Schaeffer with the Lodi Police Department and "was given excuse after excuse" by the City and Police Department before eventually filing a complaint.  (*Id.* ¶¶ 23–24.)

Around June 29, 2012, defendant Lieutenant Chris Piombo of the Lodi Police Department wrote plaintiff advising her that the complaint against Schaeffer was sustained in part, exonerated in part, and unfounded in part and that Schaeffer had been re-assigned from the case.  (*Id.* ¶ 25.)  Then, "[i]n retaliation for complaining about her unlawful, unconstitutional treatment, and also to deter and prevent [p]laintiff from pursuing a civil action in court," Schaeffer and other unknown officers "caused a misdemeanor criminal complaint to

/////

2

1    be filed against [p]laintiff."  (*Id.* ¶ 26.)  The complaint alleges plaintiff "obstructed and resisted

2    a peace officer and interfered with the customers of a public agency."  (*Id.*)

3                Plaintiff filed her original complaint in the instant action on March 5, 2013 (ECF

4    1) and her First Amended Complaint on May 31, 2013 (ECF 5).  Plaintiff asserts six causes of

5    action: (1) excessive force under 42 U.S.C. § 1983 in violation of the Fourth and Fourteenth

6    Amendments against defendant Schaeffer; (2) denial of First Amendment rights under

7    42 U.S.C. § 1983 against defendant Schaeffer; (3) failure to supervise under 42 U.S.C. § 1983

8    against defendants Butterfield and Piombo; (4) failure to train under 42 U.S.C. § 1983 against

9    defendants Butterfield and Piombo; (5) battery against defendants Schaeffer and City of Lodi;

10   and (6) interference with civil rights guaranteed by the First and Fourth Amendments and

11   Article I, Section 13 of the California Constitution under California Civil Code § 52.1 against

12   defendants Schaeffer and City of Lodi.  Plaintiff also sues Does 1–20.[1]

13               Defendants filed the instant motions to dismiss on June 28, 2013.  (ECFs 7, 8.)

14   Plaintiff filed her oppositions on August 2, 2013 (ECFs 11, 12), and defendants filed their

15   replies on August 9, 2013 (ECFs 13, 14).

16   III.    STANDARD

17               Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move

18   to dismiss a complaint for "failure to state a claim upon which relief can be granted."  A court

19   may dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts

20

21           [1] The Ninth Circuit provides that "'[plaintiffs] should be given an opportunity through
     discovery to identify [] unknown defendants'" "in circumstances . . . 'where the identity of the
22   alleged defendant[] [is] not [] known prior to the filing of a complaint.'"  *Wakefield v.*
     *Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (quoting *Gillespie v. Civiletti*, 629 F.2d 637,
23   642 (9th Cir. 1980)). Plaintiff is warned, however, that such defendants will be dismissed
     where "'it is clear that discovery would not uncover the identities, or that the complaint would
24   be dismissed on other grounds.'"  *Id.* (quoting *Gillespie*, 629 F.2d at 642).  Plaintiff is further
     warned that Federal Rule of Civil Procedure 4(m), which states that the court must dismiss
25   defendants who have not been served within 120 days after the filing of the complaint unless
     plaintiff shows good cause, is applicable to Doe defendants.  *See Glass v. Fields*,
26   No. 1:09-cv-00098-OWW-SMS PC, 2011 U.S. Dist. LEXIS 97604 (E.D. Cal. Aug. 31, 2011);
27   *Hard Drive Prods. v. Does*, No. C 11-01567 LB, 2011 U.S. Dist. LEXIS 109837, at *2–4 (N.D.
     Cal. Sep. 27, 2011).
28

1  alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699
2  (9th Cir. 1990).

3          Although a complaint need contain only "a short and plain statement of the
4  claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), in order to survive a
5  motion to dismiss this short and plain statement "must contain sufficient factual matter . . . to
6  'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678
7  (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must
8  include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation"
9  or "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of
10 action . . . .'" *Id.* (quoting *Twombly*, 550 U.S. at 555).  Determining whether a complaint will
11 survive a motion to dismiss for failure to state a claim is a "context-specific task that requires
12 the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.
13 Ultimately, the inquiry focuses on the interplay between the factual allegations of the complaint
14 and the dispositive issues of law in the action.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73
15 (1984).

16          In making this context-specific evaluation, this court "must presume all factual
17 allegations of the complaint to be true and draw all reasonable inferences in favor of the
18 nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  This rule
19 does not apply to "'a legal conclusion couched as a factual allegation,'" *Papasan v. Allain*,
20 478 U.S. 265, 286 (1986), *quoted in Twombly*, 550 U.S. at 555, nor to "allegations that
21 contradict matters properly subject to judicial notice," or to material attached to or incorporated
22 by reference into the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th
23 Cir. 2001).  A defendant's alternative version of the facts contained in a motion is not properly
24 before the court on a motion to dismiss.  *Usher*, 828 F.2d at 561.  A court's consideration of
25 documents attached to a complaint or incorporated by reference or matter of judicial notice will
26 not convert a motion to dismiss into a motion for summary judgment. *United States v. Ritchie*,
27 342 F.3d 903, 907–08 (9th Cir. 2003).
28 /////

                                               4

III.     CONSIDERATION OF DOCUMENTS

        As a threshold matter, the court notes it will not consider defendants' exhibits attached to their motions.  (Decl. of Mark E. Berry, Exs. B & C, ECF 8-2; Decl. of Janice D. Magdich, Exs. B & C, ECF 7-2.)  These exhibits contain the misdemeanor criminal complaint against plaintiff and a copy of the docket for that case, which arose out of the interaction between plaintiff and defendant Schaeffer that is the subject of the instant case.

        The court is permitted to consider documents relied upon for a claim or extensively referenced in a complaint.  *Ritchie*, 342 F.3d at 908.  This rule operates to prevent "plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting reference to documents upon which their claims are based."  *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).  Here, plaintiff notes she was charged with two misdemeanors (FAC ¶ 26), and the court accepts this as true for the purposes of this motion.  However, plaintiff does not rely upon or extensively reference either document reflecting the criminal charges.  (ECF 8-2, Exs. B & C.)  Moreover, the exhibits do not contain contradictory facts or substantially more information than plaintiff provides in her complaint.  (*See* FAC ¶¶ 21, 26 (noting plaintiff was charged with obstructing and resisting a peace officer and interfering with the customers of a public agency after refusing to leave as instructed by defendant Schaeffer).)  Thus, the court does not find defendant's exhibits integral to the plaintiff's claims and does not consider them for the purposes of resolving the instant motions to dismiss.

IV.     ANALYSIS

        The individual defendants seek to dismiss each of plaintiff's claims for failure to state a claim for which relief can be granted.  (ECF 8-1.)  Defendant Lodi joins them in arguing plaintiff's fifth and sixth causes of action should be dismissed.  (ECF 7-1.)  The court will address these arguments against plaintiff's six claims in turn.

/////

/////

/////

/////

5

A.      Excessive Force in Violation of Fourth, Fourteenth Amendments (Claim One)

The individual defendants argue plaintiff's Fourth Amendment theory of this claim, brought under section 1983 against defendant Schaeffer, should be dismissed because plaintiff Coe was not seized, nor was defendant Schaeffer's use of force objectively unreasonable.  (ECF 8-1 at 5.)  Schaeffer simply escorted plaintiff from the CAC conference room when she refused to leave voluntarily.  (*Id.*)  Further, defendants assert plaintiff's Fourteenth Amendment theory of this claim should be dismissed as a matter of law because it is redundant of plaintiff's Fourth Amendment argument.  (*Id.* at 8.)

Plaintiff counters that she has pled facts sufficient to demonstrate that a seizure occurred and that the amount of force defendant Schaeffer used was objectively unreasonable.  (ECF 11 at 7–9.)  Moreover, plaintiff argues that the fact-intensive nature of the reasonableness inquiry renders dismissal as a matter of law improper.  (*Id.* at 9 (citing *Gregory v. Cnty. of Maui*, 523 F.3d 1103, 1106 (9th Cir. 2008)).)

1.      Fourth Amendment

a.      Seizure

"[T]he use of physical means to restrain a person's movement is the most obvious form of seizure."  *United States v. Sokolow*, 831 F.2d 1413, 1416 (9th Cir. 1987), *rev'd on other grounds*, 490 U.S. 1 (1989).  A person has been seized within the meaning of the Fourth Amendment "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."  *United States v. Anderson*, 663 F.2d 934, 939 (9th Cir. 1981) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)).  "Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers . . . some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled."  *Id.* (quoting *Mendenhall*, 446 U.S. at 554).

Accepting as true plaintiff's allegations in the complaint, defendant Schaeffer "seized" plaintiff within the meaning of the Fourth Amendment.  Plaintiff asserts that Schaeffer

6

"yelled at [her] to get out of the room . . . grabbed [her] arms and shoved [her] back and shoulder against the door and wall of the conference room, tightly gripped [her] arms, and threatened to have [her] arrested for not leaving when told." (FAC ¶ 21.) Additionally, plaintiff alleges that Schaeffer "opened the conference room door and shoved [her] out of the room." (*Id.* ¶ 22.) These allegations involve the physical touching of plaintiff's person and the use of language "indicating that compliance with [Schaeffer's] request might be compelled." *Anderson*, 663 F.2d at 939. It is axiomatic that a person is not free to leave if her arms are being "tightly gripped."

Plaintiff's claim of seizure within the meaning of the Fourth Amendment may proceed.

#### b.    Excessive Force

A claim of excessive force in violation of the Fourth Amendment is analyzed under an objective reasonableness standard. *Scott v. Harris*, 550 U.S. 372, 381 (2007). The "reasonableness" inquiry in an excessive force case measures whether the officer's actions are "objectively reasonable" in light of the facts and circumstances confronting her, without regard to the officer's underlying intent or motivation. *Graham*, 490 U.S. at 396–97. To determine if a Fourth Amendment violation has occurred, the extent of the intrusion on the individual's Fourth Amendment rights must be balanced against the government's interests to determine whether the officer's conduct was objectively reasonable based on the totality of the circumstances. *Miller v. Clark County*, 340 F.3d 959, 964, 968 (9th Cir. 2003).

The analysis involves three steps. First, the severity of the intrusion on the individual's Fourth Amendment rights is assessed by evaluating the type and amount of force inflicted. *Id.* at 964. Second, the government's interests are evaluated by assessing (1) the severity of the crime; (2) whether the suspect posed an immediate threat to the officer's or public's safety; and (3) whether the suspect was resisting arrest or attempting to escape. *Id.* Third, the gravity of the intrusion on the individual is balanced against the government's need for that intrusion. *Id.* Ultimately, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in

circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97.

Accepted as true, plaintiff's alleged facts are sufficient to make out a claim of excessive force under the Fourth Amendment. First, the amount of force inflicted on plaintiff, while not severe, was not insubstantial, as it consisted of yelling, threats of arrest, grabbing tightly on the arms, a shove against the wall and door, and a shove out of the room. (FAC ¶¶ 21–22.) *Graham*, 490 U.S. at 396–97.

Plaintiff also pleads sufficient facts to plausibly characterize the government's interests as relatively insubstantial. First, the crimes with which plaintiff was charged are not severe. Plaintiff's description of the event alleges that she remonstrated verbally with defendant Schaeffer, refused to leave when instructed, and, at worst, called her "obstinate" and "obtuse." (FAC ¶¶ 17–22.) The charged crimes arising from the allegations in the instant case — resisting a peace officer and interfering with the customers of a public agency — are misdemeanors. (*Id.* ¶ 26.) Second, plaintiff's descriptions of her conduct that resulted in Schaeffer's use of force demonstrate she was nonviolent and thus did not pose a serious or immediate threat to Schaeffer or to the public. (*Id.* ¶¶ 17–22.) Third, plaintiff did not resist arrest or attempt escape. Her allegations demonstrate instead that she refused to follow Schaeffer's order to leave the room and that she was, at worst, unruly. *See Graham*, 490 U.S. at 396–97.

These allegations together are sufficient to state a plausible claim for use of excessive force: the government had little need for such an intrusion on plaintiff. *See id.* On a motion to dismiss, the court's inquiry is only whether plaintiff states a plausible claim, not whether she has pled a successful claim. *Iqbal*, 556 U.S. at 678.

2.      Fourteenth Amendment

Plaintiff's first claim alleging excessive force may not, however, be maintained under the Fourteenth Amendment. *See Graham*, 490 U.S. at 395 (holding that "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth

8

Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach") (original emphasis).  Plaintiff argues in her opposition that her Fourteenth Amendment theory is an alternative claim alleging that Schaeffer's actions so shocked the conscience that they violated plaintiff's due process rights.  (ECF 11 at 10.)  Plaintiff has not pled this claim or theory, however.  Instead, she alleges that Schaeffer's use of excessive force violated her Fourteenth Amendment rights.  (FAC ¶ 28.)  The court dismisses plaintiff's first claim with prejudice to the extent it is premised on the Fourteenth Amendment.

### 3.  Qualified Immunity

Defendants argue qualified immunity applies to shield defendant Schaeffer from plaintiff's first claim because plaintiff does not demonstrate a violation of a clearly established constitutional right.  (ECF 7-1 at 7.)  They contend qualified immunity applies to any actions by Schaeffer, barring suit against her, since no reasonable police officer would expect to be engaging in unconstitutional behavior by requiring an uncooperative person to leave a public building through the use of minimal force.  (ECF 8-1 at 13.)

Plaintiff contends this is the type of case in which the court cannot resolve qualified immunity on a motion to dismiss because it would require making factual determinations.  (ECF 11 at 17.)  She argues qualified immunity does not apply because plaintiff has a clearly established right not to have excessive force used against her by police officers.  (*Id.* at 17.)  Further, plaintiff avers that she has a clearly established right to be free from excessive force when she is not physically threatening or resisting, and that she has a clearly established right to criticize police without suffering retaliatory acts.  (*Id.*)  Defendants respond by requesting the court refrain from making unreasonable inferences related to Schaeffer's motive.  (ECF 13 at 2.)

"Qualified immunity shields public officials from civil damages for performance of discretionary functions.  It is 'an immunity from suit rather than a mere defense to liability . . . .'"  *Mueller v. Auker*, 576 F.3d 979, 992 (9th Cir. 2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).  Law enforcement officers are shielded from suit unless their conduct violates "clearly established statutory or constitutional rights of which a

1    reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The

2    qualified immunity test is twofold.  Under the first prong, the court considers whether the

3    alleged facts, taken in the light most favorable to plaintiff, show that defendants' conduct

4    violated a constitutional right.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part in*

5    *other grounds by Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  Under the second prong, the

6    court must determine whether that constitutional right was "clearly established."  *Id.*  Courts

7    have discretion to address the prongs in any order in light of the circumstances of each case.

8    *Pearson*, 555 U.S. at 236.  Additionally, in the excessive force context, an officer is entitled to

9    immunity if she has a "mistaken understanding as to whether a particular amount of force is

10   legal" in the particular circumstances confronting her.  *Id.* at 205.

11           To decide whether qualified immunity applies, the court here will consider

12   (1) whether there was a violation of a constitutional right; (2) whether it was clearly

13   established; and (3) whether the officer's potential mistake regarding the amount of force

14   necessary was reasonable under the circumstances.

15                          a.      Violation of Constitutional Right

16           The court has already found that plaintiff has alleged facts sufficient to make out

17   a claim of excessive force under the Fourth Amendment.  Plaintiff has demonstrated a violation

18   of a constitutional right.

19                          b.      Clearly Established

20           The court next considers whether the violated constitutional right was clearly

21   established.  The immunity inquiry focuses on whether the "right was clearly established at the

22   time of the violative conduct."  *Nelson*, 685 F.3d at 883.  Determining whether a right was

23   clearly established is a context-specific inquiry not amenable to "'broad general

24   proposition[s].'"  *Id.* (quoting *Saucier*, 533 U.S. at 201).  At the same time, to demonstrate a

25   right is clearly established, it is not necessary that a defendant's specific behavior had been

26   previously declared unconstitutional; instead, it is enough that "the unlawfulness was apparent

27   in light of preexisting law.'"  *Id.* at 885 (quoting *Jensen v. City of Oxnard*, 145 F.3d 1078, 1085

28   (9th Cir. 1998)).

1    The right allegedly violated here is the right to be free from excessive force.

2    (ECF 11 at 17.)  It is true that police officers need not use the least intrusive means available to

3    them.  *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994).  However, at the time of defendant

4    Schaeffer's conduct at issue here, it was clearly established that "it is unreasonable to use

5    significant force against a suspect who was suspected of a minor crime, posed no apparent

6    threat to officer safety, and could be found not to have resisted arrest."  *Young v. Cnty. of*

7    *Los Angeles*, 655 F.3d 1156, 1168 (9th Cir. 2011).

8    Plaintiff has shown this constitutional right was clearly established.

9    c.    Reasonable Mistake

10    Finally, the court considers whether Schaeffer made a reasonable mistake in her

11    use of force such that qualified immunity still applies.  Qualified immunity protects "all but the

12    plainly incompetent or those who knowingly violate the law," *Malley v. Briggs*, 475 U.S. 335,

13    341 (1986), and leaves "ample room for mistaken judgments," *id.* at 343.  "If the officer's

14    mistake as to what the law requires is reasonable," then "the officer is entitled to the immunity

15    defense." *Saucier*, 533 U.S. at 205.  Qualified immunity operates "to protect officers from the

16    sometimes hazy border between excessive and acceptable force, and to ensure that before they

17    are subjected to suit, officers are on notice their conduct is unlawful." *Id.* at 206 (internal

18    quotations and citation omitted).

19    While courts should resolve issues of qualified immunity as early as possible,

20    *Saucier*, 533 U.S. at 201, this court must accept as true plaintiff's alleged facts, *Usher v. City of*

21    *Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  These facts show that plaintiff, a grandmother

22    in her fifties, posed no physical threat to anyone, that she was only verbally remonstrating, and

23    that her actions resulted in charges against her for misdemeanor crimes of obstructing and

24    resisting a peace officer and interfering with the customers of a public agency.  (FAC ¶¶ 17–

25    26.)  In response to plaintiff's actions, Schaeffer yelled, threatened arrest, grabbed plaintiff

26    tightly on the arms, shoved plaintiff against the wall and door, and shoved plaintiff out of the

27    /////

28

11

1    room.  (FAC ¶¶ 21-22.)  On these facts, Schaeffer's mistaken understanding that the law

2    permitted her to use this amount of force is not reasonable.  *See Saucier*, 533 U.S. at 205.

3              Schaeffer is not entitled to qualified immunity.

4         B.    Denial of First Amendment Rights (Claim Two)

5              Defendants assert plaintiff's First Amendment claim is not actionable because

6    she was not engaged in a constitutionally protected activity.  (ECF 7-1 at 8; ECF 8-1 at 8.)

7    They argue Schaeffer ejected plaintiff from the CAC conference room to preserve the peace

8    and safety of the CAC, its staff, and the victims it assists.  (ECF 7-1 at 8.)  To support their

9    position, defendants note that plaintiff was not prevented from exercising her First Amendment

10   rights in a public forum outside of the conference room.  (ECF 7-1 at 8; ECF 8-1 at 9.)

11             Plaintiff contends Schaeffer suppressed her speech when ejecting her because

12   Schaeffer opposed her view that Schaeffer was "obstinate" and "obtuse" and that the police

13   department's policy was not working.  (ECF 12 at 11.)  Plaintiff argues Schaeffer used

14   unreasonable force to suppress her constitutionally protected speech.  (*Id.*)  Plaintiff also claims

15   the use of force and subsequent complaint to the District Attorney were forms of retaliation

16   designed to abridge plaintiff's First Amendment rights.  (ECF 11 at 11.)

17             Defendants respond that it was not until plaintiff was incensed and stood to

18   insult Schaeffer that Schaeffer forcibly removed plaintiff.  (ECF 13 at 4.)  Further, they argue it

19   is an unreasonable inference to find that plaintiff was ejected due to Schaeffer's disagreement

20   with the content of plaintiff's speech because the complaint shows plaintiff was enraged, which

21   formed the basis for Schaeffer's safety concerns.  (ECF 14 at 6 (citing FAC ¶ 21).)

22             In a public forum, the "First Amendment protects a significant amount of verbal

23   criticism and challenges directed at police officers."  *City of Houston v. Hill*, 482 U.S. 451, 461

24   (1987).  However, speech restrictions in nonpublic forums are subject to less-exacting judicial

25   scrutiny.  *Flint v. Dennison*, 488 F.3d 816, 830 (9th Cir. 2007).  "Public property which is not

26   by tradition or designation a forum for public communication is governed by different

27   standards."  *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983).  "In

28

                                            12

1    addition to time, place, and manner regulations, the state may reserve the [nonpublic] forum for

2    its intended purposes, communicative or otherwise, as long as the regulation on speech is

3    reasonable and not an effort to suppress expression merely because public officials oppose the

4    speaker's view." *Id.*

5           The court first addresses defendants' suppression of speech arguments, turning

6    next to their retaliation arguments.

7                    1.      Suppression of Speech in the Conference Room

8                            a.      Nonpublic Forum

9           First, in light of plaintiff's allegations, the court finds the CAC conference room

10   is a nonpublic forum.  Public forums, both by tradition and by designation, are places held open

11   for expressive activity.  *Perry*, 460 U.S. at 45–46.  The conference room here is used to conduct

12   interviews (FAC ¶¶ 16–17); it is unlike a public park or area designated for the public at large

13   for speech or assembly.  *See Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788,

14   802 (1985) ("The government does not create a public forum by inaction or by permitting

15   limited discourse, but only by intentionally opening a nontraditional forum for public

16   discourse.").  As it has not been held open to the public for expressive activities, the CAC

17   conference room is a nonpublic forum.

18                           b.      Reasonable Restriction

19          Next, the court finds the restriction on speech reasonable.  Whether a restriction

20   is reasonable "must be assessed in the light of the purpose of the forum and all the surrounding

21   circumstances."  *Cornelius*, 473 U.S. at 809.  The Supreme Court has firmly established that

22   excluding certain persons from nonpublic forums "may reasonably be considered a means of

23   'insuring peace' . . ." and "the Government need not wait until havoc is wreaked to restrict

24   access to a nonpublic forum."  *Id.* at 810 (citing *Perry*, 460 U.S. at 52 n.12).

25          Here, the conference room was located at the CAC, where plaintiff took her

26   granddaughter to be interviewed about witnessing sexual impropriety.  (FAC ¶ 14.)  The

27   purpose of the CAC and its conference room was not to serve as a venue for plaintiff's

28   frustrations with department policy and defendant Schaeffer.  Given the purpose of the space,

1    Schaeffer placed a reasonable restriction on plaintiff's speech, even if Schaeffer enforced that

2    restriction in an unreasonable manner.

3                            c.      Effort to Merely Suppress View

4            The court also finds the restriction was not meant to suppress plaintiff's

5    viewpoint.  A restriction on speech in a nonpublic forum must not be "an effort to suppress

6    expression merely because public officials oppose the speaker's view." *Perry*, 460 U.S. at 46.

7    Plaintiff argues Schaeffer opposed plaintiff's view that department policy was not working and

8    that Schaeffer was "obstinate" and "obtuse."  (ECF 11 at 11 (citing FAC ¶ 21).)

9            Plaintiff's argument is meritless.  "[T]he State, no less than a private owner of

10   property, has power to preserve the property under its control for the use to which it is lawfully

11   dedicated." *Perry*, 460 U.S. at 46.  Plaintiff states that she and Schaeffer discussed plaintiff's

12   views on CAC policies and plaintiff's anger about not being able to sit in on her grandchild's

13   interview.  (FAC ¶ 19.)  Schaeffer did not attempt to suppress plaintiff's speech at this point;

14   Schaeffer only "replied that it was policy not to share information" and, in response to

15   plaintiff's statement that "this policy did not work," resumed asking plaintiff "accusatory

16   questions."  (*Id.*)  Schaeffer ordered plaintiff to leave and subsequently forcibly removed

17   plaintiff only after plaintiff became enraged, stood up, and yelled at Schaeffer.  (*Id.* ¶¶ 21–22.)

18   With Barbara Aguilar of San Joaquin County Child Protective Services present in the

19   conference room (*id.* ¶ 17), Schaeffer could reasonably have found that plaintiff was impeding

20   CAC operations.

21           Plaintiff has not stated a claim for violation of her First Amendment rights in the

22   CAC conference room.

23                    2.      Retaliation

24           The court next concludes that defendant Schaeffer did not retaliate against

25   plaintiff in violation of plaintiff's First Amendment rights by causing a misdemeanor criminal

26   complaint to be filed against plaintiff after the conference room incident.

27           "In order to demonstrate a First Amendment violation, a plaintiff must provide

28   evidence showing that by his actions the defendant deterred or chilled the plaintiff's political

1   speech and such deterrence was a substantial or motivating factor in the defendant's conduct."

2   *Mendocino Envtl. Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) (internal

3   quotations omitted). "Intent to inhibit speech, which is an element of the claim, . . . can be

4   demonstrated either through direct or circumstantial evidence." *Id.* at 1300–01 (internal

5   quotations omitted).  "[The Ninth Circuit] cases require only a demonstration that defendants

6   *intended* to interfere with [plaintiff's] First Amendment rights."  *Lacey v. Maricopa Cnty.*,

7   649 F.3d 1118, 1132 (9th Cir. 2011) (original emphasis) (internal quotations marks omitted).

8   The proper inquiry is whether "an official's acts would chill or silence a person of ordinary

9   firmness from future First Amendment activities."  *Id.*

10          Plaintiff has not stated a retaliation claim.  The complaint alleges Schaeffer and

11  unknown officers at the Lodi Police Department caused a misdemeanor complaint to be filed

12  against her based upon representations these officers knew to be false.  (FAC ¶ 26.)  However,

13  plaintiff does not show a connection between Schaeffer's forwarding the report to the District

14  Attorney and any intent to interfere with plaintiff's First Amendment rights.  *Compare Lacey*,

15  649 F.3d at 1133 (recognizing sufficient facts to show intent where an arrest order without

16  probable cause issued the same day as an article critical of a department investigation), *with*

17  *O'Brien v. Welty*, No. 1:12-CV-2017, 2013 WL 2300920, at *10–11 (E.D. Cal. May 24, 2013)

18  ("[T]here is no evidence that the imposition of the Disciplinary Probation should have a

19  chilling effect on Plaintiff's right to expressive activity because Plaintiff is not excluded from

20  free expression in any forum that would otherwise be available to him.").  Even if plaintiff did

21  show a connection, the filing of a misdemeanor complaint in these circumstances would not

22  chill or silence a person of ordinary firmness from speaking out against CAC policies.  *See*

23  *Lacey*, 649 F.3d at 1132.  Plaintiff remains free to speak her mind about CAC policies in any

24  other forum.  *See O'Brien*, 2013 WL 2300920, at *10–11.

25          For all of the above reasons, plaintiff does not show a plausible claim for denial

26  of First Amendment rights as a matter of law.  Because permitting amendment of this claim

27  would be futile, *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989),

28  plaintiff's second claim is dismissed with prejudice.

C.      Supervisor Liability (Claims Three and Four)

        The court next considers whether plaintiff sufficiently pleads claims for failure

to supervise and failure to train under 42 U.S.C. § 1983 against Officers Butterfield and

Piombo of the Lodi Police Department.  (FAC ¶¶ 35–44.)  Because the relevant arguments and

law are essentially the same for both claims, the court considers these two causes of action

together.

        Defendants argue there is no supervisor liability because plaintiff fails to allege

that Butterfield and Piombo were present at the CAC when the underlying actions occurred.

(ECF 8-1 at 12.)  Additionally, defendants assert plaintiff fails to allege Butterfield and Piombo

directed Schaeffer to commit, or knew and failed to prevent Schaeffer from committing, the

underlying actions.  (*Id.*)  Instead, defendants contend, plaintiff makes only conclusory

contentions that the officers should have prevented the actions because their subordinates had a

history of misbehavior.  (*Id.*)

        Plaintiff argues Officers Butterfield and Piombo were not required to be present

to find liability because they knew or should have known this constitutional violation would

occur.  (ECF 11 at 15.)  Plaintiff also contends Butterfield and Piombo failed to train Officer

Schaeffer on proper use of force and investigative techniques when they should have known

her past behavior could cause a deprivation of constitutional rights.  (*Id.* at 16.)  Defendants

respond by pointing to the absence of facts related to plaintiff's claims for failure to supervise

and failure to train and inquire as to both, "What facts are the defendants expected to defend

against?"  (ECF 14 at 8–9.)

        In general, "supervisory officials are not liable for the actions of subordinates on

any theory of vicarious liability under 42 U.S.C. § 1983."  *Jeffers v. Gomez*, 267 F.3d 895, 915

(9th Cir. 2001).  But supervisors can be held liable for: "1) their own culpable action or

inaction in the training, supervision, or control of subordinates; 2) their acquiescence in the

constitutional deprivation of which a complaint is made; or 3) for conduct that showed a

reckless or callous indifference to the rights of others."  *Cunningham v. Gates*, 229 F.3d 1271,

1292 (9th Cir. 2000); *see Larez v. City of L.A.*, 946 F.2d 630, 646 (9th Cir. 1991). The Ninth

16

1   Circuit has found "supervisorial liability under § 1983 where the supervisor 'was personally

2   involved in the constitutional deprivation or a sufficient causal connection exists between the

3   supervisor's unlawful conduct and the constitutional violation.'" *Edgerly v. City & Cnty. of*

4   *S.F.*, 599 F.3d 946, 961 (9th Cir. 2010) (quoting *Lolli v. Cnty. of Orange*, 351 F.3d 410, 418

5   (9th Cir. 2003)).

6                          1.      Failure to Supervise

7                  Plaintiff relies on a conclusory allegation regarding a history of misconduct to

8   provide a basis for her claim that Officers Butterfield and Piombo failed to supervise Officer

9   Schaeffer.  (FAC ¶¶ 36–37.)  In the general factual allegations of the First Amended Complaint

10  (*id.* ¶¶ 11–26), plaintiff never mentions Officer Butterfield and only mentions Officer Piombo

11  once when referring to a complaint she filed with the Lodi Police Department after the CAC

12  conference room events.  (*Id.* ¶ 25.)

13                 Plaintiff pleads no facts showing Butterfield or Piombo directed, condoned, or

14  knew or should have known an unconstitutional use of force would occur.  Plaintiff pleads no

15  facts showing any misconduct by Butterfield or Piombo, any evidence of Schaeffer's alleged

16  history of misbehavior, or any causal connection whatsoever.  Plaintiff must plead more than

17  "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action . . . .'"

18  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Plaintiff's single allegation of a "history of

19  misconduct" is insufficient to meet this standard.

20                 The court grants the defendant's motion to dismiss plaintiff's third claim but

21  with leave to amend in the event plaintiff is able to cure her pleading of this claim while

22  complying with Federal Rule of Civil Procedure 11.

23                         2.      Failure to Train

24                 In her failure to train claim, plaintiff again relies solely on conclusory

25  allegations.  Plaintiff alleges "[d]efendant's misconduct alleged herein occurred because of

26  BUTTERFIELD's, PIOMBO's . . . failure to train their subordinates, including officer H.

27  SCHAEFFER, in the proper use of force and proper investigation techniques . . . ."  (FAC

28

                                           17

¶ 41.)  Plaintiff alleges no facts as to how Officers Butterfield and Piombo trained Officer Schaeffer or whether they were even responsible for training Officer Schaeffer.

The court grants the defendant's motion to dismiss plaintiff's fourth claim with leave to amend.

D.    Battery (Claim Five)

Defendants argue plaintiff's battery claim should be dismissed because Schaeffer acted reasonably considering plaintiff's belligerence.  (ECF 8-1 at 10.)  Defendants aver Schaeffer used the least amount of force necessary to subdue plaintiff "[o]ut of a legitimate concern for the safety of [the CPS investigator]."  (ECF 7-1 at 6.)  Defendants point to the fact that plaintiff did not allege she was taken to the ground, struck, placed in any type of pain, or prevented from leaving the CAC.  (*Id.*)  Because of this, defendants argue plaintiff only alleges Schaeffer applied "an objectively reasonable amount of force necessarily to resolve a tense and escalating situation."  (*Id.*)

The plaintiff responds by arguing she was not violent or a threat, yet Schaeffer grabbed and shoved her with a disproportionate amount of force.  (ECF 11 at 12.)  Defendants reply by arguing plaintiff fails to show how the force used by Officer Schaeffer was not minimally intrusive and claim there is a lack of significant factual substance to support the claimed misconduct by Schaeffer.  (ECF 14 at 4–5.)

There are three elements of a civil battery: (1) defendant intentionally did an act that resulted in a harmful or offensive contact with the plaintiff's person; (2) plaintiff did not consent to the contact; and (3) the harmful or offensive contact caused injury, damage, loss, or harm to the plaintiff.  *Piedra v. Dugan*, 123 Cal. App. 4th 1483, 1495 (2004). When bringing a claim of battery against a police officer, "[p]laintiff must prove unreasonable force as an element of the tort."  *Edson v. City of Anaheim*, 63 Cal. App. 4th 1269, 1272 (1998).

Because the court has already found that plaintiff pleads a viable excessive force claim, plaintiff's battery claim is also viable.  *See Nelson v. City of Davis*, 709 F. Supp. 2d 978, 992 (E.D. Cal. 2010), *aff'd*, 685 F.3d 867 (9th Cir. 2012) ("Because the same standards apply to both state law assault and battery and [s]ection 1983 claims premised on constitutionally

18

prohibited excessive force, the fact that Plaintiff's 1983 claims under the Fourth Amendment survive summary judgment also mandates that the assault and battery claims similarly survive."); *Susag v. City of Lake Forest*, 94 Cal. App. 4th 1401, 1412–13 (2002) ("[I]t appears unsound to distinguish between section 1983 and state law claims arising from the same alleged misconduct.").  Plaintiff has sufficiently pled her battery claim.

> Defendants' motion to dismiss plaintiff's battery claim is denied.

### E.   Interference with Civil Rights  (Claim Six)

> Finally, the court considers whether plaintiff has pled a valid theory of interference with a civil right under California Civil Code § 52.1.  That section provides in relevant part:

> If a person or persons, whether or not acting under color of law, interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state, [any individual may institute and prosecute in his or her own name] in order to protect the peaceable exercise or enjoyment of the right or rights secured.

CAL. CIV. CODE § 52.1(a), (b).  The parties dispute the theories under which plaintiff brings her sixth claim: the right to be secure against unreasonable seizures pursuant to the Fourth Amendment or freedom of speech under the First Amendment.  The court considers both theories.

### 1.   Fourth Amendment Violation under Section 52.1

> Defendants contend that there is no showing of a violation of Fourth Amendment rights, so the claim under Civil Code section 52.1 cannot stand because Officer Schaeffer used objectively reasonable force.  (ECF 8-1 at 11.)  Plaintiff argues that because the elements for an excessive force claim under section 52.1 are essentially identical to the elements for one under section 1983 (ECF 11 at 14), plaintiff has sufficiently pled a claim for interference with a civil right under state law.  (ECF 11 at 14.)  Defendants respond that plaintiff does not state a claim under section 52.1 because that section applies only to allegations of hate crimes.  (ECF 14 at 5.)

19

"The elements of a Section 52.1 excessive force claim are essentially identical to those of a 1983 excessive force claim." *Duenez v. City of Manteca*, No. CIV. S–11–1820 LKK/KJN, 2012 WL 4359229, at *14 (E.D. Cal. Feb. 23, 2012); *see also Corser v. Cnty. of Merced*, No. 1:05-CV-00985, 2009 WL 174144, at *25 (E.D. Cal. Jan. 26, 2009) ("[T]he survival of Plaintiff's section 1983 excessive force claim against [the police officer] naturally entails the survival of a parallel section 52.1 claim against [him].").  Because the court has found that plaintiff sufficiently pled an excessive force claim under the Fourth Amendment, plaintiff's section 52.1 claim for interference with a civil right under an excessive force theory also stands.

Defendants' argument that the legislative history of section 52.1 demonstrates that this section applies only to hate crimes is meritless.  Nothing in the plain language of section 52.1 suggests it must be limited to hate crimes.  *See* CAL. CIV. CODE § 52.1.  Defendant relies on *Jones v. Kmart Corp.*, 17 Cal. 4th 329, 338 (1998), but that case is inapposite.  While the California Supreme Court stated in *Jones* that the legislative motivation for section 52.1 was stemming the tide of hate crimes, the court later explicitly clarified that "[its] statement [in *Jones v. Kmart Corp.*] did not suggest that section 52.1 was limited to such crimes, or required plaintiffs to demonstrate that County or its officers had a discriminatory purpose in harassing them, that is, that they committed an actual hate crime." *Venegas v. Cnty. of L.A.*, 32 Cal. 4th 820, 843 (2004).

Defendants' motion to dismiss plaintiff's sixth claim insofar as it is based on a theory of excessive force under the Fourth Amendment is denied.

2.    First Amendment Violation under Section 52.1

As previously discussed, the court has found plaintiff did not state a claim for denial of First Amendment rights under section 1983.  Accordingly, plaintiff has also not stated a claim under section 52.1 based upon a theory of a violation of the First Amendment.

/////

/////

/////

IV.    <u>CONCLUSION</u>

For the foregoing reasons, the court orders:

1. Individual defendants' motion to dismiss plaintiff's First Cause of Action for excessive force under 42 U.S.C. § 1983 against defendant Schaeffer is DENIED as premised on a violation of the Fourth Amendment of United States Constitution and GRANTED with prejudice as premised on a violation of the Fourteenth Amendment of United States Constitution.

2. Individual defendants' motion to dismiss plaintiff's Second Cause of Action for denial of First Amendment rights under 42 U.S.C. § 1983 against defendant Schaeffer is GRANTED without leave to amend.

3. Individual defendants' motion to dismiss plaintiff's Third Cause of Action for failure to supervise under 42 U.S.C. § 1983 against defendants Butterfield and Piombo is GRANTED with leave to amend.

4. Individual defendants' motion to dismiss plaintiff's Fourth Cause of Action for failure to train under 42 U.S.C. § 1983 against defendants Butterfield and Piombo is GRANTED with leave to amend.

5. Defendants' motion to dismiss plaintiff's Fifth Cause of Action for battery against defendants Schaeffer and City of Lodi is DENIED.

6. Defendants' motion to dismiss plaintiff's Sixth Cause of Action for interference with civil rights under California Civil Code § 52.1 against defendants Schaeffer and City of Lodi is DENIED as premised on the Fourth Amendment and GRANTED as premised on the First Amendment.

IT IS SO ORDERED.

Dated:  January 6, 2014.

_____
UNITED STATES DISTRICT JUDGE

21