UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHEREE RENE COE, | No. 2:13-cv-00432-KJM-CKD |
| Plaintiff, | |
| v. | ORDER |
| Lodi Police Officer H. SCHAEFFER (individual capacity), et al., | |
| Defendants. | |

This action arises from defendant Lodi Police Officer H. Schaeffer's use of force to remove plaintiff Sheree Coe from a conference room at San Joaquin County's J.D. Kortzeborn Child Advocacy Center ("the CAC") on February 21, 2012. This matter is before the court on the renewed motion for summary judgment brought by defendants Schaeffer, Chris Piombo and the City of Lodi. ECF No. 69 ("Mot."). Plaintiff opposes the motion. ECF No. 71 ("Opp'n"). The court held a hearing on the matter on February 12, 2016, at which Manolo Olaso appeared for plaintiff and Mark Berry appeared for defendants. As explained below, the court GRANTS IN PART and DENIES IN PART defendants' motion.

/////

/////

/////

1

I. UNDISPUTED FACTS

The court has examined the record to determine whether the submitted facts are supported and whether there exists a genuine dispute. The following facts are undisputed, unless otherwise specified.

A. February 21, 2012 Forensic Interview of Jane Doe

Coe has helped raise and care for her daughter's four children, including "Jane Doe," a minor. Undisputed Material Fact no. 1, ECF Nos. 69-2 & 71-1 ("UMF"). On February 21, 2012, Lodi Police Officer Schaeffer requested that Jane Doe's mother, Coe's daughter, bring Jane Doe to the CAC for a forensic interview, because Jane Doe had disclosed to a counselor that she was being sexually abused by one of her older brothers. UMF nos. 2–3. The Lodi Police Department had previously investigated instances of sexual assault against Jane Doe. *See* Coe Dep. 27:4–29:5. Jane Doe's mother asked Coe if she could take Jane Doe to the interview, so Coe brought Jane Doe and Jane Doe's twin brother to the CAC that afternoon. UMF nos. 4–6; Coe Dep. 27:1–6, 39:6–13. Upon arrival at the CAC, Jane Doe was taken to the forensic interview room while Coe and Jane Doe's twin brother waited in the lobby. UMF no. 10.

According to the San Joaquin County Child Abuse Investigative Protocol, the main goal of forensic interviews at the CAC is to "[p]rovide a safe, supportive environment in which a child shares information regarding what the child's experience has been." Berry Decl. Ex. E at 20, ECF No. 79-3. The Protocol advises "[t]he chief concern of both the law enforcement detective and social worker should be the welfare of the child(ren)." *Id.* at 15. At a forensic interview, direct observation by persons involved in the investigative process, such as law enforcement, Child Protective Services (CPS), the district attorney, and county counsel, can be accomplished by use of an observation room and window/mirror. UMF no. 13. "Parents, caretakers, guardians and relatives are not allowed to observe the interview at the CAC." Berry Decl. Ex. E at 24.

Carol Cabral, a forensic interview specialist with San Joaquin County, conducted Jane Doe's interview. UMF no. 16. During the interview, Schaeffer and Barbara Aguilar, a San Joaquin County CPS social worker/investigator, observed from behind a two-way mirror. UMF

2

1  no. 19.  Coe was not allowed to observe Jane Doe's interview.  UMF no. 15.  Jane Doe's
2  statements during the forensic interview were consistent with her previous allegations of sexual
3  abuse.  UMF no. 22.

        B.       <u>February 21, 2012 Post-Interview Meeting with Coe</u>

After the interview, Schaeffer and Aguilar met with Coe in the conference room, as is customary, to get contact information, try to determine the level of risk presented to Jane Doe, and determine if immediate intervention was necessary.  UMF nos. 23, 29.  At this point, Jane Doe and her brother waited for Coe in the lobby.  UMF no. 25.  There is a short hallway connecting the lobby to the conference room.  UMF nos. 26, 27.  The conference room is located approximately five feet down the hallway and to the left, behind a partially-glass door.  UMF nos. 27, 28; *see* Coe Dep. Exs. C & D, ECF No. 69-3.  Another partially-glass door separates the lobby from the hallway.  UMF no. 26.  Cabral was not present at the meeting with Coe, but she was in a nearby room less than ten feet away with the door open.  UMF nos. 30, 31.  From her position, Cabral could see and hear into the conference room without anything obstructing her view.  UMF no. 32.

When the meeting began, Coe became frustrated and angry at not having been allowed to observe Jane Doe's interview.  UMF no. 33.  Schaeffer explained to Coe that she was not allowed to be part of the interview process, as provided by CAC policy.  UMF no. 34.  From this point, the parties present conflicting accounts of the interaction.

Defendants submitted the following facts in support of their motion.  Aguilar testified that "pretty soon in the conversation," Coe became "frustrated" and "angry."  UMF no. 35.  Coe admits that she was "upset."  UMF no. 36; Coe Dep. 61:22–25.  Coe began using profanity.  UMF no. 37.  Coe said, "this is fucked up," "you are fucked up," and "fuck you," and referred to Schaeffer, who is a woman, as "Missy."  UMF no. 38; Schaeffer Dep. 67:25–68:20.  Coe Dep. 67:1–68:13.  Aguilar testified that Schaeffer did not yell at Coe or lose her composure.  Aguilar Dep. 29:13–20.  Schaeffer and Aguilar testified Schaeffer told Coe they were in a center for children, and she needed to stop using profanity and calm down.  Schaeffer Dep. 68:5–9; Aguilar Dep. 25:15–23.  Aguilar testified that Coe jumped up from the table and slammed her

1  hands down onto the table. Aguilar Dep. 25:24–26:14. Cabral heard Coe screaming inside the
2  conference room, and saw her jump up from the table and yell "fuck you" to Schaeffer while
3  waving her arms. Cabral Dep. 28:22–30:9. Aguilar testified she was startled and "taken aback"
4  by Coe's behavior. Aguilar Dep. 26:10–14. Cabral testified Schaeffer responded "sternly and
5  professionally" by telling Coe not to speak that way and to leave the CAC. Cabral Dep. 30:10–
6  19. According to Aguilar and Schaeffer, Schaeffer told Coe to leave several times, but Coe
7  refused and said, "Fuck you," to Schaeffer. Aguilar Dep. 24:4–5, 31:8–21; Schaeffer Dep.
8  68:12–20. Coe testified she does not recall if she refused to leave the conference room after she
9  was told to leave. Coe Dep. 70:21–24.

Plaintiff submitted the following facts, based primarily on Coe's testimony, in response. Coe testified that Schaeffer shouted at her, accused her daughter of knowing Jane Doe was abused for the last two years, threatened to put her daughter in jail, and threatened to remove Jane Doe and Jane Doe's twin brother from her daughter's custody. Coe Dep. 54:18–55:14, 62:14–24, 63:3–14. Coe testified that she felt verbally attacked and "very threatened" by Schaeffer. Coe Dep. 56:16–57:2, 63:3–5. Coe testified that she stood up and backed away from the table. Coe Dep. 63:3–13. Coe admitted in her deposition that she was emotional, "probably said, 'Fuck you,' to the officer," and told Schaeffer, "This is fucked up." Coe Dep. 66:17–20, 69:12–18; UMF no. 47. Coe does not recall what else she said after that point. Coe Dep. 67:6–9. Coe does not recall Schaeffer telling her to calm down or that her behavior was inappropriate. Coe Dep. 84:12–21. Coe testified that Schaeffer grabbed her by the upper right arm and pushed her out the conference room door, told her to get out, and then threatened to "have someone come take care of [her]." Coe Dep. 66:17–67:9, 70:8–13, 72:15–16, 75:18–76:3. Coe testified Schaeffer drove her thumb into her skin in two places. Coe Dep. 87:21–88:6; *see* UMF no. 71.

Coe testified she resisted being pushed, and Schaeffer threw her against the wall in the hallway opposite the conference room door. Coe Dep. 70:18–20, 72:17–73:15. Coe testified Schaeffer then spun her around and put her against the door leading out to the lobby. Coe Dep. 74:9–12. Cabral testified she did not ever see Coe's left elbow or back impact the hallway wall. Cabral Dep. 56:9–14.

4

The parties dispute whether Coe attempted to pull away from Schaeffer as they moved down the short hallway leading to the lobby door. *Compare* Cabral Dep. 32:1–3, *with* Coe Dep. 88:7–9. Cabral heard Coe say, "Get your hands off of me. I'll file a complaint and I'll have the bruises to prove it." Cabral Dep. 32:4–15; *see* UMF no. 52. According to Schaeffer's testimony, Coe began to fight against Schaeffer, resisted movement down the hall, screamed profanities, twisted Schaeffer's arms, and pushed Schaeffer. Schaeffer Dep. 69:11–19. According to Coe's testimony, Coe never pushed Schaeffer back or tried to pull away. Coe Dep. 86:16–24, 88:7–9.

Aguilar did not hear Coe say anything to indicate that she was being hurt or manhandled in any way while she was in the hallway. UMF no. 55. Cabral did not hear Coe cry out in pain. UMF no. 56. Cabral testified she never saw any injuries on Coe. UMF no. 70. At some point in the hallway, Schaeffer "realized that there was a window [in the lobby door], and the victim and her little brother were going to watch this unfold." Schaeffer Dep. 70:10–16; UMF no. 57. Schaeffer testified, in order to prevent further trauma to the observing grandchildren, she decided not to arrest Coe. UMF no. 58. Schaeffer testified, "I wanted it to just end, her to leave, the kids to be calm." Schaeffer Dep. 73:9–12; UMF no. 59. Schaeffer suggests in her deposition the grandchildren could at some point see what was happening through the window in the lobby door. Schaeffer Dep. 70:10-13.

Coe testified Schaeffer then shoved her through the lobby door and into the waiting area. Coe Dep. 78:24–79:14. Coe asked Schaeffer for the name of her supervisor, to which Schaeffer responded, "Corporal Butterfield." Schaeffer Dep. 72:19–23; UMF no. 62. A CAC employee told Coe to leave, and she complied. UMF no. 63.

C.   Post-Incident Action by the Lodi Police Department

After Schaeffer left the CAC on February 21, 2012, she reported the incident to her Lodi Police Department supervisor, Roger Butterfield, and his supervisor, Piombo. UMF no. 74. Neither Butterfield nor Piombo was present at the time of the incident. UMF no. 73. Butterfield suggested that Schaeffer file a criminal complaint against Coe for resisting,

5

obstructing or delaying a peace officer, in violation of California Penal Code section 148(a)(1).[1] UMF no. 76.

On or about February 22, 2012, Coe met with Lodi Police Officer Tod Patterson to file a citizen's complaint. UMF no. 77. The Lodi Police Department investigated the incident, which included interviewing Schaeffer, Coe, Aguilar and Cabral. UMF no. 78. Coe's complaint was determined to be unfounded. UMF no. 79.

### D. Criminal Case Against Coe

On April 20, 2012, the San Joaquin County District Attorney filed a criminal complaint against Coe, charging her with resisting, obstructing or delaying a peace officer in violation of Penal Code section 148(a)(1), and interference with a public agency by obstructing/intimidating customers in violation of Penal Code section 602.1(b).[2] UMF no. 80. Coe eventually pleaded guilty to a charge of disturbing the peace under Penal Code section 415(2).[3] UMF no. 81.

---

[1] Penal Code section 148(a)(1) states:

> Every person who willfully resists, delays, or obstructs any public officer . . . in the discharge or attempt to discharge any duty of his or her office or employment, when no other punishment is prescribed, shall be punished by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not to exceed one year, or by both that fine and imprisonment.

[2] Penal Code section 602.1(b) states:

> Any person who intentionally interferes with any lawful business carried on by the employees of a public agency open to the public, by obstructing or intimidating those attempting to carry on business, or those persons there to transact business with the public agency, and who refuses to leave the premises of the public agency after being requested to leave by the office manager or a supervisor of the public agency, or by a peace officer acting at the request of the office manager or a supervisor of the public agency, is guilty of a misdemeanor, punishable by imprisonment in a county jail for up to 90 days, or by a fine of up to four hundred dollars ($400), or by both that imprisonment and fine.

[3] Penal Code section 415 states:

> Any of the following persons shall be punished by imprisonment in the county jail for a period of not more than 90 days, a fine of not

  E. Claims Against Piombo

Piombo was not present at the CAC during the incident. UMF no. 73. Coe has not identified any evidence showing that Piombo encouraged Schaeffer to use excessive force against Coe. UMF no. 94.

On the date of the incident, Piombo was Butterfield's supervisor and Butterfield was Schaeffer's supervisor. UMF no. 95. Piombo did not assign Schaeffer to the investigation involving Jane Doe and had no role in investigating the allegations of sexual abuse. UMF nos. 96–97.

Piombo was not aware of the incident until the following day. UMF no. 102. Piombo was made aware that Coe had filed a citizen's complaint against Schaeffer and that the complaint was being investigated. UMF no. 99. Piombo was the investigations lieutenant on the date of the incident. UMF no. 104. Piombo reviewed and approved Schaeffer's incident investigation report. UMF no. 98. Piombo also communicated the investigative findings to Schaeffer and Coe. Piombo Dep. 31:24–32:6, 36:10–22, 44:15–46:25.

Prior to the incident, Schaeffer was never trained, disciplined or reprimanded as a result of any disciplinary process at the Lodi Police Department. UMF no. 101.

  F. Opinions of Chief Chapman

Clarence Robert Chapman is a retired Chief of Police for the University of California, Los Angeles Police Department and retired Captain of the Los Angeles County Sheriff's Department. UMF no. 82. Chief Chapman has reviewed all of the sworn testimony in this case and all exchanged written discovery. UMF no. 83. Chief Chapman is the only declared expert in this case. UMF no. 84.

---

> more than four hundred dollars ($400), or both such imprisonment and fine:
>
> . . . .
>
> (2) Any person who maliciously and willfully disturbs another person by loud and unreasonable noise.
>
> . . . .

7

Plaintiff does not dispute the following conclusions made by Chief Chapman: Schaeffer acted properly and correctly in following CAC policy to not allow Coe to observe Jane Doe's interview, UMF no. 85; Schaeffer had probable cause to arrest Coe at the CAC for committing, in the least, a violation of Penal Code section 415(2), UMF no. 86; and in an attempt to preserve the sanctity of the CAC and avoid further trauma to Coe's observing grandchildren, Schaeffer chose the correct course of action by not arresting Coe at the CAC, but instead referring the matter to the District Attorney, UMF no. 91.

Coe disputes Chief Chapman's conclusions that Schaeffer's use of force comported with California's Peace Officer Standards and Training (POST) regulations,[4] was no greater than that of a formal arrest, and constituted a reasonable amount of force under the circumstances. *See* Pl.'s Response to Defs.' UMF nos. 88–90, ECF No. 71-1. Coe has not identified an expert to counter these findings. UMF no. 93.

G. Procedural Background

Plaintiff filed a complaint in March 2013, an amended complaint in May 2013, and the operative second amended complaint in January 2014. ECF Nos. 1, 5, 19. The second amended complaint asserts five claims: (1) violations of plaintiff's Fourth and Fourteenth Amendment rights to be free from unreasonable seizure and excessive force under 42 U.S.C. § 1983 against Schaeffer; (2) and (3) violations of the same rights under § 1983 against Piombo and Butterfield, respectively, for the failure to train and to supervise Schaeffer; (4) common law battery against Schaeffer and the City of Lodi; and (5) interference with plaintiff's constitutional rights in violation of California Civil Code section 52.1 (the Bane Act) against Schaeffer and the City of Lodi. Second Am. Compl. ("SAC"), ECF No. 19.

After two rounds of motion practice on the pleadings, *see* Mots. Dismiss, ECF Nos. 7, 8, 23, defendants answered the complaint in May 2014, ECF Nos. 28, 29. On March 10, 2015, plaintiff moved to modify the scheduling order and extend the discovery cut-off date to

---

[4] "The Commission on [POST] was established by the Legislature in 1959 to set minimum selection and training standards for California law enforcement." Commission on POST, *About Us*, https://www.post.ca.gov/about-us.aspx (last visited Feb. 12, 2016).

1 complete discovery regarding plaintiff's supervisory liability claims. ECF No. 37. On May 21,
2 2015, defendants filed a motion for summary judgment. ECF No. 47. Plaintiff opposed the
3 motion, again contending she needed additional discovery on her supervisory liability claims.
4 ECF No. 48 at 10–11. On June 17, 2015, the court denied plaintiff's motion to modify the
5 scheduling order and extend the discovery cut-off date. ECF No. 51. On July 27, 2015, the court
6 reconsidered its June 17, 2015 order and denied defendants' motion for summary judgment
7 without prejudice to allow plaintiff additional time to depose Butterfield and Piombo. ECF
8 No. 56. The order provided that, upon completion of the depositions, defendants could file a new
9 motion for summary judgment. *Id.* On December 12, 2015, plaintiff dismissed Butterfield from
10 the action by stipulation. ECF No. 68.

11 On December 15, 2015, defendants Schaeffer, Piombo and the City of Lodi filed
12 the pending renewed motion for summary judgment. ECF No. 69. Plaintiff opposed the motion,
13 ECF No. 71, and defendants replied, ECF No. 72.

14 II. SUMMARY JUDGMENT STANDARD

15 A court will grant summary judgment "if . . . there is no genuine dispute as to any
16 material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).
17 The "threshold inquiry" is whether "there are any genuine factual issues that properly can be
18 resolved only by a finder of fact because they may reasonably be resolved in favor of either
19 party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

20 The moving party bears the initial burden of showing the district court "that there
21 is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*,
22 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party, which "must establish
23 that there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio*
24 *Corp.*, 475 U.S. 574, 585 (1986). In carrying their burdens, both parties must "cit[e] to particular
25 parts of materials in the record . . .; or show [] that the materials cited do not establish the absence
26 or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to
27 support the fact." Fed. R. Civ. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[The
28 nonmoving party] must do more than simply show that there is some metaphysical doubt as to the

1   material facts."). Moreover, "the requirement is that there be no genuine issue of material
2   fact . . . . Only disputes over facts that might affect the outcome of the suit under the governing
3   law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247–48
4   (emphasis in original).

5   In deciding a motion for summary judgment, the court draws all inferences and
6   views all evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at
7   587–88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008). "Where the record taken as a
8   whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine
9   issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv.*
10  *Co.*, 391 U.S. 253, 289 (1968)).

11  A court may consider evidence as long as it is "admissible at trial." *Fraser v.*
12  *Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). "Admissibility at trial" depends not on the
13  evidence's form, but on its content. *Block v. City of L.A.*, 253 F.3d 410, 418–19 (9th Cir. 2001)
14  (citing *Celotex Corp.*, 477 U.S. at 324). The party seeking admission of evidence "bears the
15  burden of proof of admissibility." *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1004 (9th Cir.
16  2002). If the opposing party objects to the proposed evidence, the party seeking admission must
17  direct the district court to "authenticating documents, deposition testimony bearing on attribution,
18  hearsay exceptions and exemptions, or other evidentiary principles under which the evidence in
19  question could be deemed admissible . . . ." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385–86
20  (9th Cir. 2010). However, courts are sometimes "much more lenient" with the affidavits and
21  documents of the party opposing summary judgment. *Scharf v. U.S. Atty. Gen.*, 597 F.2d 1240,
22  1243 (9th Cir. 1979).

23  III.    DISCUSSION

24  Defendants Schaeffer, Piombo and the City of Lodi move for summary judgment
25  on each of plaintiff's claims. Defendants represent that the "critical issue" underlying their
26  motion is whether Schaeffer used an objectively reasonable amount of force to remove Coe from
27  the CAC conference room. *See* ECF No. 69-1 at 1. The court addresses the claims against each
28  defendant in turn.

A. Claims Against Schaeffer

    1. Unreasonable Seizure Under the Fourth and Fourteenth Amendments

        a) Reasonableness of Force

Defendants argue they are entitled to summary judgment on Coe's § 1983 excessive force claim against Schaeffer because Schaeffer used an objectively reasonable amount of force as a matter of law. The Fourth Amendment, which applies to the states by virtue of the Fourteenth Amendment, *see Mapp v. Ohio*, 367 U.S. 643, 650, 655–56 (1961), guarantees "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV. The "reasonableness" inquiry in an excessive force case considers whether the officer's actions were "objectively reasonable" in light of the facts and circumstances confronting the officer, without regard to the officer's underlying intent or motivation. *Graham v. Connor*, 490 U.S. 386, 397 (1989). To determine if a constitutional violation has occurred, the court balances the extent of the intrusion on the individual's rights against the countervailing governmental interests at stake. *Id.* at 396.

When applying the *Graham* test, courts in the Ninth Circuit proceed in three steps. *Miller v. Clark Cty.*, 340 F.3d 959, 964 (9th Cir. 2003). First, the court assesses the gravity of the intrusion on the individual's constitutional rights by evaluating the type and amount of force inflicted. *Id.* at 964. Here, it is undisputed Schaeffer grabbed Coe's arm and used force to remove her from the CAC conference room. *See* Coe Dep. 66:17–67:9, 70:8–13, 72:15–16, 75:18–76:3; Cabral Dep. 30:20–25; Schaeffer Dep. 68:16–70:21. The parties dispute the exact type and amount of force inflicted, but Coe testified Schaeffer drove her thumb into Coe's skin in two places, Coe Dep. 87:21–88:6, threw Coe against the wall in the hallway opposite the conference room door, *id.* 72:17–73:15, and spun Coe around and put her up against the door leading to the lobby, *id.* 74:9–12. In addition, plaintiff has submitted photographs showing bruising on her arms. Olaso Decl. Exs. 4 & 5, ECF No. 71-2. Although defendants argue Coe's self-serving testimony cannot establish a genuine dispute of fact, this case is distinguishable from the cases cited by defendants. For example, in *Kennedy v. Applause, Inc.*, 90 F.3d 1477 (9th Cir. 1996), the court held the plaintiff's deposition testimony did not establish a genuine dispute of

fact because it "flatly contradict[ed] both [the plaintiff's] prior sworn statements and the medical evidence." *Id.* at 1481. Here, in contrast, Coe's testimony is not so inconsistent with the record as a whole that no reasonable juror could believe it. Viewing the evidence in the light most favorable to plaintiff, a reasonable juror could conclude the intrusion on Coe's rights was substantial.

At the second step of the *Graham/Miller* test, the court assesses the importance and legitimacy of the government's interests by evaluating: "(1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Miller*, 340 F.3d at 964 (citing *Graham*, 490 U.S. at 396). Applying those factors here, Coe ultimately pleaded guilty to disturbing the peace by loud or unreasonable noise under Penal Code section 415(2), which is a non-violent misdemeanor. *See* Coe Dep. 97:1–6. At the same time, the government has a strong interest in maintaining the peace at the CAC, which hosts child victims of sexual assault. This factor favors the government.

However, it does not appear Coe posed an immediate threat to the safety of Schaeffer or others under the second factor. Coe was upset and used profanity during the interaction, but there is no evidence Coe physically or verbally threatened Schaeffer. *See* UMF nos. 36 & 37. Coe testified that she did not push Schaeffer or attempt to pull away from her at any time. Coe Dep. 86:16–24, 88:7–9. In addition, although Schaeffer testified she had felt threatened by Coe because Coe's behavior "kind of indicate[d]" that there may have been something unstable about her, no other persons at the center expressed to Schaeffer they had felt afraid, frightened, or threatened by Coe. *See* Schaeffer Dep. 75:4–19. This factor weighs against the government.

With respect to the third factor, the record suggests Coe resisted leaving the CAC conference room, but it is not clear to what extent. Aguilar and Schaeffer testified that Schaeffer told Coe to leave several times, Aguilar Dep. 31:8–21; Schaeffer Dep. 68:12–20, but the exact timeline of events is disputed. Aguilar testified she remembers Coe arguing and "Schaeffer having to ask her repeatedly to leave the room," and she remembers "[Coe] was still exchanging

words with Detective Schaeffer after she left the room." Aguilar Dep. 31:8–21. Coe testified that after she backed away from the conference table, she said, "This is fucked up," and believes she told Schaeffer, "Fuck you," and then Schaeffer grabbed her arm and shoved her out of the conference room. Coe Dep. 66:17–70:13. When asked whether she refused to leave after being told to get out, Coe responded she resisted being pushed, and does not recall whether she refused to leave after being told to. Coe Dep. 70:18–24. Based on the evidence submitted, it is unclear how much time had passed before Schaeffer decided to grab Coe's arm, whether Coe resisted leaving before Schaeffer grabbed her, and whether Schaeffer gave Coe sufficient time to comply with an order to get out. *Compare* Coe Dep. 70:6–24, *with* Schaeffer Dep. 68:12–20. Accordingly, it is not clear whether the amount of force used was necessary, or whether less forceful means could have achieved the government's interests. In addition, there is no evidence Coe attempted to evade arrest by flight. In light of the conflicting evidence, a reasonable juror could conclude this factor only somewhat favors the government.

At the final step of the *Graham/Miller* test, the court weighs the gravity of the intrusion on the individual's rights against the government's need for that intrusion to determine whether the force applied was constitutionally reasonable. *Miller*, 340 F.3d at 964, 966. Reasonableness determinations must allow for the fact that police officers are often forced to make "split-second judgments . . . in circumstances that are tense, uncertain and rapidly evolving." *Graham*, 490 U.S. at 397. "While the test for reasonableness is often a question for the jury, this issue may be decided as a matter of law if, in resolving all factual disputes in favor of the plaintiff, the officer's force was 'objectively reasonable' under the circumstances." *Jackson v. City of Bremerton*, 268 F.3d 646, 651 n.1 (9th Cir. 2001) (citations omitted). As discussed above, given that a reasonable juror could conclude that the invasion of Coe's rights was substantial, that Coe did not pose an immediate threat to safety, and that not much time had passed before Schaeffer grabbed Coe's arm, a reasonable juror could conclude Schaeffer's use of force was objectively unreasonable. Thus, the court cannot conclude Schaeffer's use of force was objectively reasonable as a matter of law; the reasonableness test is a question for the jury. *See*

*Matsushita*, 475 U.S. at 587 ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" (citation omitted)).

### b) Qualified Immunity

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The qualified immunity test is two-fold. Under one prong, the court considers whether the facts show a violation of a constitutional right, here, the Fourth Amendment. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Under a second prong, the court determines whether the constitutional right was "clearly established" at the time of the violation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Qualified immunity is applicable unless both prongs are satisfied, i.e., the official's conduct violated a constitutional right and the right was clearly established at the time of the violation. *Id.* Courts in their sound discretion can address the two prongs in any order, *id.* at 236, and an insufficient showing on either prong ends the analysis and shows the official is immune. *Mueller v. Auker*, 576 F.3d 979, 994 (9th Cir. 2009); *see also Pearson*, 555 U.S. at 239-41.

Under the "clearly established" prong, the touchstone question is whether it would be clear to a reasonable officer that her conduct was unlawful in the situation she confronted. *Auker*, 576 F.3d at 993 ("[T]he second-step question in this case is, was the law such that it should have been clear to Detective Rogers that he was required *in the situation he confronted* to give pre-deprivation and post-deprivation notice to an absent father." (emphasis in original)). For purposes of qualified immunity, the right at issue must be defined at "the appropriate level of generality . . . [the court] must not allow an overly generalized or excessively specific construction of the right to guide [its] analysis." *Cunningham v. Gates*, 229 F.3d 1271, 1288 (9th Cir. 2000); *see also Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S. Ct. 2074, 2084 (2011) ("We have repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality." (citation omitted)); *Thomas v. Dillard*, __F.3d__, 2016 WL 1319765, at *16 (9th Cir. 2016) (noting Supreme Court's admonition).

Here, defendants argue Schaeffer's conduct did not violate clearly established law. As discussed above, there is a genuine dispute of fact as to the amount of force applied, the level of threat to safety Coe posed, and the necessity of the means Schaeffer used. Because the parties dispute the circumstances surrounding Schaeffer's use of force, the court cannot determine as a matter of law that it would not have been clear to a reasonable officer that Schaeffer's conduct was unlawful in the situation she confronted. If a jury believes Coe's narrative, Schaeffer would not be entitled to qualified immunity, because it was clearly established law at the time that it constitutes excessive force to grab, push, and slam a nonresistant individual against a wall for committing a minor crime without first attempting a less violent means. *See Young v. Cty. of Los Angeles*, 655 F.3d 1156, 1168 (9th Cir. 2011) ("The principle that it is unreasonable to use significant force against a suspect who was suspected of a minor crime, posed no apparent threat to officer safety, and could be found not to have resisted arrest, was thus well-established in 2001, years before the events at issue in this case." (discussing *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 (9th Cir. 2007), and *Graham*, 490 U.S. at 396–97). As such, the court cannot at this time find Schaeffer entitled to qualified immunity. The court DENIES defendants' motion for summary judgment on plaintiff's § 1983 claim against Schaeffer.

### 2. State Law Claims

Coe also asserts state law claims against Schaeffer for battery and interference with her constitutional rights under California Civil Code section 52.1 (the Bane Act). SAC ¶¶ 47–55. Defendants challenge plaintiff's state law claims for the same reason they challenge plaintiff's § 1983 claim, asserting Schaeffer's use of force was not unconstitutional.[5]

---

[5] Defendants initially also argued they are immune from plaintiff's state law claims under California Government Code section 820.2, but conceded at hearing section 820.2 does not apply to Schaeffer's conduct. *See Liberal v. Estrada*, 632 F.3d 1064, 1084 (9th Cir. 2011) ("As a matter of law, section 820.2 immunity does not apply to an officer's decision to detain or arrest a suspect." (citing *Gillan v. City of San Marino*, 147 Cal. App. 4th 1033, 1051 (2007)); *see also Martinez v. City of Los Angeles*, 141 F.3d 1373, 1379 (9th Cir. 1998) (immunity extends only to policy decisions).

Section 52.1 prohibits any person from interfering by "threats, intimidation or coercion . . . with the exercise or enjoyment by any individual . . . of rights secured by the Constitution . . . ." Cal. Civ. Code § 52.1(a). Although section 52.1 claims differ from § 1983 claims in that section 52.1 also requires a showing of independent evidence of threats, intimidation, or coercion, *see Malott v. Placer Cty.*, No. 2:14-1040, 2016 WL 538462, at *7 (E.D. Cal. Feb. 11, 2016), defendants here challenge only whether an unconstitutional act occurred. Because the court has found genuine disputes of fact exist with respect to the reasonableness of Schaeffer's use of force under § 1983, and the same standard applies to battery and section 52.1 claims premised on constitutionally prohibited excessive force, plaintiff's battery and section 52.1 claims similarly survive. *See Nelson v. City of Davis*, 709 F. Supp. 2d 978, 992 (E.D. Cal. 2010) ("[T]he same standards apply to both state law assault and battery and Section 1983 claims premised on constitutionally prohibited excessive force . . . ."); *cf. Reynolds v. Cty. of San Diego*, 84 F.3d 1162, 1170–71 (9th Cir. 1996) (affirming summary judgment as to section 52.1 claim because it was based solely on federal protections and court found no federal constitutional violation), *overruled on other grounds by Acri v. Varian Assocs., Inc.*, 114 F.3d 999 (9th Cir. 1997). The court DENIES defendants' motion for summary judgment on plaintiff's state law claims against Schaeffer.

B. <u>Claims Against the City of Lodi</u>

Coe alleges the City of Lodi is vicariously liable for Schaeffer's conduct with respect to plaintiff's battery and section 52.1 claims. *See* SAC ¶¶ 10, 47–55. Defendants contend the court must grant summary judgment for the City of Lodi if it grants summary judgment for Schaeffer. ECF No. 69-1 at 18. Because the claims against Schaeffer survive, the claims against the City of Lodi also survive. The court DENIES defendants' motion for summary judgment on plaintiff's state law claims against the City of Lodi.

C. <u>Claims Against Piombo</u>

Coe asserts § 1983 supervisory liability claims against Piombo for the failure to train or to supervise Schaeffer. SAC ¶¶ 31–46. Defendants move for summary judgment, contending there is insufficient evidence to establish Piombo's supervisory liability.

16

A defendant may be held liable as a supervisor under § 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). "The requisite causal connection can be established . . . by setting in motion a series of acts by others, or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." *Id.* at 1207–08 (internal quotation marks and citations omitted) (alterations in *Starr*). "A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Id.* at 1208 (quoting *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998)).

Here, it is undisputed Piombo was not present during the incident. UMF no. 73. In addition, at hearing, plaintiff conceded the evidence produced in discovery does not allow her to "connect the dots" and prove a causal connection between Piombo's conduct and the alleged constitutional violation by Schaeffer. Piombo's deposition testimony establishes that his only involvement with the incident was to review and approve the incident investigative report and to communicate the investigative findings to Schaeffer and Coe. Piombo Dep. 19:12–18, 20:12–18, 31:24–32:6, 36:10–22, 44:15–47:9. Because the record could not lead a reasonable juror to find that Piombo was personally involved with the incident or that Piombo's actions caused Schaeffer to use excessive force against Coe, the court GRANTS defendants' motion for summary judgment on plaintiff's § 1983 claims against Piombo.

At hearing, plaintiff for the first time suggested discovery has revealed a basis for supervisory liability claims against Piombo in his official capacity, and argued plaintiff should be allowed to proceed to trial on such claims. Plaintiff has not requested leave to amend the second amended complaint to add official supervisory liability claims against Piombo, so the issue is not before the court and the court does not address the argument here.

IV.     CONCLUSION

For the foregoing reasons, the court GRANTS defendants' motion for summary judgment with respect to plaintiff's claims against Piombo.  The court DENIES defendants' motion with respect to plaintiff's claims against Schaeffer and the City of Lodi.

IT IS SO ORDERED.

DATED: May 9, 2016.

_____
UNITED STATES DISTRICT JUDGE